**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: _____13-cv-2481_____

**ROBERTO FUENTES**, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

**KROENKE SPORTS & ENTERTAINMENT, LLC**, a Delaware limited liability company, **D/B/A TICKETHORSE, LLC** a Colorado limited liability company, **WORLD WRESTLING ENTERTAINMENT, INC.**, a Delaware corporation, and **JOHN DOE DEFENDANTS**,

    Defendants.

---

**CLASS ACTION COMPLAINT AND JURY DEMAND**

---

    Plaintiff Roberto Fuentes ("Plaintiff" or "Fuentes") brings this class action complaint against Defendants Kroenke Sports & Entertainment, LLC ( "Kroenke" or "KSE") d/b/a TicketHorse, LLC ("Kroenke" or "TicketHorse"), World Wrestling Entertainment, Inc. ("WWE"), and John Doe Defendants ("John Doe") (collectively the "Defendants") to stop Defendants' imposition of unlawful restrictions on the resale of event tickets. Plaintiff, for his class action complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE CASE

1. Kroenke, WWE, and John Doe Defendants knowingly impose restrictions on the resale of tickets that are unlawful under the Colorado Consumer Protection Act— which was specifically amended to provide Colorado consumers with an unrestricted secondary market for the re-sale of tickets.

2. Colorado Consumer Protection Act ("CCPA" or the "Statute") § 6-1-718(3)(a) declares that, "It is void as against public policy to apply a term or condition to the original sale to the purchaser to limit the terms or conditions of resale…."

3. Defendants violate this statutory provision. Kroenke places a statement on tickets to certain events that unequivocally states "This ticket is non-transferable." Such language plainly violates the CCPA's broad prohibition on any terms that "limit the terms or conditions of resale." In fact, such language *eliminates* the ticketholder's right to resell.

4. In addition to placing such unlawful language on the face of certain of its tickets, Kroenke, in further violation of the purpose of the Statute, suppresses the resale of its tickets through an arrangement between TicketHorse and an electronic marketplace, Flash Seats, which is designed to extract fees from consumers and inflate the price of tickets on the secondary market.

5. Put succinctly, the CCPA provides that imposing terms and conditions on ticket purchasers that restrict the purchasers' rights to resell their ticket in the marketplace is against the law, but Defendants do just that.

6. By doing so, ticketholders, such as Plaintiff Fuentes, are stripped of their ability to resell their tickets in a manner that allows them to satisfy personal preference

and maximize profitability without risking invalidation of the ticket license or other consequence as a result of violating the language appearing on the ticket.

7. Through this Complaint, Plaintiff seeks to require Defendants to bring their conduct and tickets into compliance with the law and to recover all damages suffered as a result of their unlawful practices.

## PARTIES

8. Plaintiff Roberto Fuentes is a natural person domiciled in the State of Colorado.

9. Defendant Kroenke Sports and Entertainment, LLC, formerly known as Kroenke Sports Enterprises LLC, is a Delaware limited liability company with its principal place of business located at 1000 Chopper Circle, Denver, Colorado 80204. Kroenke founded and operates TicketHorse, LLC, a Colorado limited liability company with its principal place of business located at 1000 Chopper Circle, Denver, Colorado 80204. Kroenke also owns and/or operates the Pepsi Center, Dick's Sporting Goods Park, the Denver Nuggets, Colorado Avalanche, Colorado Mammoth, Colorado Rapids Soccer Club, 1STBANK Center, Paramount Theatre and Hudson Gardens ("Kroenke Properties").

10. Defendant World Wrestling Entertainment is a Delaware corporation with its principal place of business located at 1241 East Main Street, Stamford, Connecticut 06902. WWE promotes and produces entertainment at Kroenke Properties on a near-annual basis and provides links on its website where interested consumers can click "Buy Tickets" and be routed to a location for the online purchase of tickets. WWE is considered an "Operator" as defined in 6-1-718(a) of the CCPA. Many entertainment

events held at Kroenke Properties, including tickets for WWE events, have contained the provision that "This ticket is non-transferable" in plain violation of CCPA § 6-1-718 *et seq*.

11,     John Doe Defendants promote and produce events at Kroenke Properties and sell tickets to those events. John Doe Defendants therefore are considered "Operators" under the CCPA. Some of those event tickets contained the provision "This ticket is non-transferable" in plain violation of CCPA § 6-1-718 *et seq*.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332(d)(2) because (a) at least one member of the putative class, which consists of at least 100 putative class members, is a citizen of a state different from at least one of the Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

13.     This Court has personal jurisdiction over this case because Defendant KSE is headquartered and conducts its principal operations in this state and Defendants WWE and John Doe Defendants conduct business in this state at Kroenke Properties.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b) as (i) Defendant KSE's principal place of business is in this District, and (ii) most of the operative facts giving rise to Plaintiff's complaint occurred in this District.

## FACTS COMMON TO ALL COUNTS

**The language on the back of most Kroenke tickets violates CCPA § 6-1-718**

15. Kroenke promotes and produces hundreds of sporting events, concerts, shows, and other entertainment and events at venues it owns, operates, and/or controls—the Kroenke Properties (which include the Pepsi Center, Dick's Sporting Goods Park, 1STBANK Center, Paramount Theatre and Hudson Gardens).

16. Kroenke prints and sells several million tickets each year to entertainment events at Kroenke Properties.

17. The Terms and Conditions printed on certain of Kroenke's event tickets state: "This ticket is non-transferable."

18. As many of the event tickets promoted and produced by KSE contain this language, on information and belief millions of ticket purchasers and fans every year are subjected to restrictions on their resale rights in violation of CCPA § 6-1-718.

**History of Colorado Consumer Protection Act § 6-1-718**

19. The Colorado legislature amended the consumer protection act, the CCPA, in 2008 to include a provision regarding prohibitions and unlawful conditions imposed on ticket sales and resales. This provision is located at Section 6-1-718.

20. In addition to its text, the legislative history of the amendment illustrates that the Colorado legislature was deeply concerned with protecting consumers specifically with respect to the resale of tickets and securing the public's right to re-sell event tickets to whomever and however they wish.

21. When the amendment was discussed in the Sixty-sixth General Assembly, KSE representatives testified and voiced opposition. As such, Kroenke has been aware of Section 6-1-718 since before its inception.

22. The Colorado Senate passed the amendment by an 8-1 margin and Section 6-1-718 of the CPA became effective on March 19, 2008.

**KSE and TicketHorse's Further Restricting of the Secondary Market**

23. In addition to violating the plain language of the Statute, KSE also restricts the secondary market through its relationship with TicketHorse. KSE owns and operates TicketHorse and www.tickethorse.com. KSE launched TicketHorse in 2007 as a way to control the sale of tickets to events at Kroenke Properties—it had previously used Ticketmaster for these services. TIcketHorse general manager Nick Collison, while speaking to a journalist in 2011, stated that prior to TicketHorse's launch Kroenke executives asked "Can we do it better, and can we do it more profitably? The answer to both of those, we felt, was yes."

24. TicketHorse is a business unit of KSE and is controlled by KSE.

25. When a consumer visits any website for any Kroenke Property and clicks "Buy Tickets", the customer is automatically routed to www.tickethorse.com.

26. TicketHorse and TicketHorse's website is powered by Veritix, Inc., which also owns and operates Flash Seats.

27. Flash Seats is a company that operates an online secondary-market ticket marketplace where consumers can buy and sell tickets to live events, including those held at Kroenke Properties.

28. TicketHorse presents information about Flash Seats to www.tickethorse.com visitors. This includes a statement indicating that "TicketHorse presents electronic ticketing from Flash Seats."

29. Once consumers are on www.tickethorse.com, they are reminded that if they "Can't Find The Seats [They're] Looking For[,] [They Can] Buy from other fans on FLASH SEATS Marketplace, The Official Secondary Marketplace of TicketHorse." By filtering its customers to Flash Seats, KSE exposes its customers to limits on resale which KSE knows violate Colorado law. Flash Seats provides that "You are prohibited from selling or offering for sale your Right(s) through another publicly available marketplace, whether or not electronic or accessible through the Internet." Consumers are also informed that tickets acquired from non-approved sources may, under certain conditions, be void. Customers are further supposedly subjected to provisions allowing Defendants to impose fees or charges on tickets sold through a medium other than Flash Seats. Additionally, when purchasers ultimately redeem their "Flash Seats" ticket at a Kroenke Property by swiping their credit or debit card used to purchase their seats, they are presented with a stub indicating that it is "not a ticket" and that it is "non-transferable."

30. The amount of the "convenience fee" charged by Kroenke for purchases made through TicketHorse is, on information and belief, a percentage of the ticket price and can exceed $20.00. In addition to the "convenience fee" Kroenke also charges a "handling fee" for any ticket purchased through TicketHorse that is not delivered via Flash Seats. In other words, if a customer wishes to pick up his or her ticket at "Will Call" or have the ticket delivered via U.S. Mail, that customer is charged a $5.00 fee.

31. Thus, in addition to violating the letter of the Statute by placing offensive language directly on the face of its tickets, Defendants further restrict the resale of tickets through the relationship between TicketHorse and Flash Seats.

## FACTS RELATING TO WORLD WRESTLING ENTERTAINMENT

32.     Defendant WWE is a corporation that creates, conducts, and produces hundreds of live entertainment events annually at venues throughout the world, including the Pepsi Center in Denver, Colorado, a Kroenke Property. WWE promotes its events via the internet, its television broadcasts, and other outlets. It also provides links on its website (URL www.wwe.com) where customers clicking on the link are directed to websites where they may buy tickets to WWE events.

33.     WWE meets the definition of an "Operator" as defined in the CCPA, because it "promotes or produces entertainment and [] sells a ticket to an event for original sale."

34.     Some WWE tickets for events at the Pepsi Center—including all of the tickets sold for the "Monday Night Raw" event held on July 9, 2012—contain a statement indicating that "This ticket is non-transferable."

35.     On information and belief, over 10,000 tickets are sold for each WWE event held at the Pepsi Center.

## FACTS RELATING TO JOHN DOE DEFENDANTS

36.     John Doe Defendants are business entities that promote and produce entertainment at Kroenke Properties. John Doe Defendants also sell tickets to the events they promote and produce.

37.     On information and belief, tickets to certain John Doe Defendants' events at Kroenke Properties contain the proclamation that "This ticket is non-transferable" in direct violation CCPA § 6-1-718.

**FACTS RELATING TO PLAINTIFF FUENTES**

38. Plaintiff Roberto Fuentes has purchased tickets to several events at the Pepsi Center and other Kroenke Properties via TicketHorse that contain the language "this ticket is non-transferable," including:

- WWE's "Monday Night Raw" on July 9, 2012 (Pepsi Center) (Attached as "Exhibit A");

- Los Angeles Lakers v. Denver Nuggets basketball game on May 10, 2012 (Pepsi Center) (Attached as "Exhibit B"); and

- Minnesota Timberwolves v. Denver Nuggets basketball game on January 3, 2013 (Pepsi Center) (Attached as "Exhibit C").

39. Because of the unlawful restrictions imposed on certain of Kroenke's tickets, including that the tickets are non-transferable, Plaintiff and putative class members have been misled into foregoing rights and opportunities in the resale market that they otherwise would have had and that are guaranteed by Colorado law. The loss of such rights and opportunities caused them to incur actual damages.

40. Plaintiff and Class members have also suffered damages in the form of overpaying for tickets that contain a provision that was void as against public policy, the mere presence of which wrongfully discourages consumers from exercising their statutory rights, including reselling their tickets in an unrestricted fashion and improperly subjects consumers to risk of invalidation and the imposition of additional charges.

**CLASS ALLEGATIONS**

41. Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a "KSE Class" or "Class" defined as follows:

9

> All persons in the United States who purchased a ticket to an event at the Pepsi Center, Dick's Sporting Goods Park, the 1STBANK Center, Paramount Theatre or Hudson Gardens from September 10, 2009 through the present where the Terms and Conditions found on the ticket stated the ticket was non-transferable.

42. Plaintiff anticipates that it may become necessary to amend the definitions of the "Class" as additional facts and evidence are adduced in discovery.

43. **Numerosity**: The exact number of the members of the Class is unknown and not available to the Plaintiff, but it is clear that individual joinder is impracticable. Defendant KSE sells millions of tickets each and every year for events at Kroenke Properties. Class membership is ascertainable by reference to objective criteria.

44. **Commonality**: There are several questions of law and fact common to the claims of Plaintiff and the Classes that can be answered in a single proceeding, including but not limited to the following:

   (a) whether Defendants' conduct described herein violated the CCPA;

   (b) whether Defendants have stripped Class members of their legally-protected rights in the ticket resale market;

   (c) whether Plaintiff and the Putative Class members were overcharged or suffered other damages as a result of Defendants' violations of the CCPA;

   (d) whether Defendants have profited from their violations of the CCPA at the expense of Plaintiff and the putative Class Members;

   (e) whether Class members are entitled to injunctive or declaratory relief and/or damages based on Defendant's unlawful conduct;

   (f) whether Defendants are operators under the CCPA, and

   (g) such other common issues of fact and law.

45. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, as Plaintiff and other members of the Class suffered the same type of harm and sustained similar damages arising out of essentially the same unlawful conduct of Defendants—their unlawful imposition of restrictions on the resale or purchase of tickets to events at Kroenke Properties.

46. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class members, and Defendants have no defenses unique to the Plaintiff.

47. **Need for Injunctive/Declaratory Relief:** The common questions presented by this litigation can be answered within a single stroke such that enjoining Defendants' printing and sale of tickets containing the offensive restriction can be applied to the Class as a whole. Likewise, the language either offends CCPA § 6-1-718 as to each of the Class members or as to none of them such that declaratory relief may be awarded as to the Class as a whole.

48. **Predominance and Superiority**: Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the actions of Defendants. It would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' unlawful conduct on an individualized basis. Even if members of the Class could sustain such individual litigation, it would still not be

preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

## COUNT I
### Violation of the CPA, C.R.S.A § 6-1-718, *et seq*
### (On Behalf of Plaintiff and the Class)

49. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

50. The Colorado Consumer Protection Act § 6-1-718, *et seq*, protects consumers from unlawful restrictions on the sale and resale of tickets.

51. Section 6-1-718 (3)(a) provides that "it is void and against public policy to apply a term or condition to the original sale to the purchaser to limit the terms or conditions of resale. . . "

52. Defendants are owners or operators of a place of entertainment, or are promoters or producers of entertainment, and fall within the CCPA's definition of "Operator."

53. As described herein, Defendants knowingly violate this provision by including language on certain of their tickets that state, "This ticket is non-transferable." Such language imposes a limitation on resale on its face.

54. At a minimum, the statement "This ticket is non-transferable" renders the consumer's ability to resell the ticket ambiguous. As Defendants drafted the ticket language and terms, such language must be construed against Defendants.

55. Defendants further seek to restrict the resale of tickets through their arrangement with TicketHorse and Flash Seats.

56. As a direct and proximate cause of Defendants' inclusion of unlawful restrictions in their tickets, Plaintiff and Class Members have suffered and will continue to suffer actual damages in the form of monies taken via overpayments for their tickets as compared to the value of a ticket that did not contain a provision that on its face violated state law (and accounting for the risk of taking action contrary to the terms of the ticket), missed opportunities to buy and sell on more favorable terms, monies lost, the risk and imposition of additional charges, and other damages to be proven at trial.

57. Accordingly, under the CCPA, Plaintiff and the Class Members seek against each Defendant for each ticket sold for their events all actual damages, reasonable attorneys' fees, costs, an injunction against future violations, and a declaration that Defendants' conduct is unlawful.

## COUNT II
### Breach of Contract
**(On Behalf of Plaintiff and the Class)**

58. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

59. Defendants and Plaintiff and members of the Class entered into valid and enforceable contracts whereby those Class members are granted a ticket license for one of Defendants' events at a Kroenke Property.

60. All laws in effect at the time a contract is made are necessarily incorporated in and form a part of the contract and Class Members purchased their tickets under the reasonable assumption that the sellers would abide by all applicable laws, rules, and regulations.

61. As such, as an implicit or express term of the agreement between the Class Members and the Defendants, Defendants agreed to abide by CCPA § 6-1-718 with respect to each ticket sold.

62. Defendants have breached their contracts by failing to perform this condition of the contract.

63. Plaintiff and other members of the Class have performed under their agreements and have suffered damages in amounts to be proven at trial as a direct result of Defendants' unlawful practices.

64. Plaintiff, individually and on behalf of the Classes, seeks damages for the Defendants' breach of contract in an amount to be proven at trial plus costs and reasonable attorneys' fees to the extent allowable under the law.

## COUNT III
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the Class)

65. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

66. Every contract under Colorado law contains an implied covenant of good faith and fair dealing. The duty of good faith and fair dealing applies when one party has discretionary authority to determine certain terms of the contract. Defendants control the terms presented on each ticket. There is no negotiation.

67. Defendants have discretion, when drafting the Terms and Conditions of their tickets, to impose restrictions on resale or not. Customers can obtain no other tickets that would reasonably permit them any access.

68. Defendants abused their discretion and placed restrictions on their tickets as described in this Complaint that violate Colorado law.

69. As an actual and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, members of the Class suffered actual damages. These damages occurred in the form of being denied the ability to sell tickets in a manner consistent with personal preference and profit-maximizing motives, purchasing a ticket containing a provision that is against public policy, assumption of risk of invalidation of the license and other penalties, and monies paid in the form of inflated or excess service fees.

70. Plaintiff, individually and on behalf of the Class, seeks damages for the Defendants' breach of the implied covenant of good faith and fair dealing, reasonable attorneys' fees, expenses, and costs to the extent allowable.

## COUNT IV
### Unjust Enrichment (*in the alternative to Breach of Contract*)
### (On Behalf of Plaintiff and the Class)

71. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

72. In the alternative to Plaintiff's breach of contract allegations, the Defendants have profited by knowingly imposing unlawful restrictive terms on Plaintiff and the Class and by exploiting consumers through their improper restriction of the

15

secondary market to make more money for themselves, including by transforming tickets into non-transferable electronic passes.

73. Plaintiff and the Class members have no adequate remedy at law.

74. Under principles of equity, good conscience, and as a matter of public policy, Defendants should not be permitted to retain the benefits they have wrongfully received from Plaintiff and the other Class members as a result of their coercive behavior and should be disgorged of such profits and/or be required to make restitution to Plaintiff and the Classes.

75. Plaintiff, individually and on behalf of the Class, seeks restitution of all monies Defendants unjustly received as a result of their conduct, as well as interest, reasonable attorneys' fees, expenses, and costs to the extent allowable, as well as all other relief the Court deems necessary to make Plaintiff Fuentes and the Class members whole.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Roberto Fuentes, individually and on behalf of the Class, prays for the following relief:

1. An order certifying the Class as defined above, appointing Plaintiff Roberto Fuentes as the representative of the Class, and appointing his counsel as Class Counsel;

2. An award of actual damages on all counts where such relief is available in an amount to be proven at trial;

3. An injunction requiring Defendants to cease their imposition of unlawful restrictions on the resale of tickets to entertainment at Kroenke Properties;

4.      Declaratory relief stating that Defendants' inclusion of a statement on their tickets that the tickets are "non-transferable" violates the CCPA;

5.      An award of reasonable attorneys' fees and costs;

6.      To the extent appropriate under the circumstances, a payment of money to a charity or other appropriate *cy pres* focused on consumer protection and fan rights with respect to combating unlawful restrictions on the resale of tickets; and

7.      Such further and other relief the Court deems reasonable and just.

Dated: September 11, 2013                Respectfully submitted,

                                                           /s/ Steven L. Woodrow
                                                           One of Plaintiff's Attorneys

STEVEN L. WOODROW #43140
swoodrow@edelson.com
MEGAN L. LINDSEY #43817
mlindsey@edelson.com
EDELSON LLC
999 West 18th Street, Suite 3000
Denver, Colorado 80202
Telephone: 303.357.4878
Fax: 303.446.9111

JAY EDELSON, Esq.
EDELSON LLC
350 North LaSalle, Suite 1300
Chicago, Illinois 60654
Telephone: 312.589.6375

*Attorneys for Plaintiff and the Putative Class*