**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Philip A. Brimmer**

Civil Action No.:      13-cv-2481-PAB-CBS

ROBERTO FUENTES, individually and on
behalf of all others similarly situated,

      Plaintiff,

*vs*.

KROENKE SPORTS &
ENTERTAINMENT, LLC, d/b/a [sic]
TICKETHORSE, LLC, WORLD
WRESTLING ENTERTAINMENT, INC.,
and JOHN DOE DEFENDANTS,

      Defendants.

---

**DEFENDANT KROENKE SPORTS & ENTERTAINMENT, LLC'S
REPLY IN SUPPORT OF OPPOSED MOTION TO
DENY CLASS CERTIFICATION [Doc. No. 22]**

---

Plaintiff's Opposition cannot overcome the inherent, fundamental problems raised by any attempt to proceed on a class basis: Plaintiff seeks certification of a massively overbroad class of "potentially millions" (Opp. at 2) of members situated differently from each other in material respects, most of whom unquestionably could have suffered no injury or even potentially benefitted from the conduct in question. In addition, to proceed on a class basis the Court would first have to make significant individual findings simply to ascertain who the appropriate class members are, and then make even more significant individual findings in the event damages

determinations become necessary.  Far from a "text book" example of class actions, certification

in this case is antithetical to the policies underlying Rule 23.

I.     **THE RELEVANT STANDARD DOES NOT PRECLUDE DENIAL OF CERTIFICATION.**

Plaintiff argues that a motion to deny class certification cannot be granted prior to

discovery absent a showing that "class certification would be *impossible*."  (Opp. at 2).  Plaintiff,

however, does nothing to (and cannot) counter the following well-engrained principle:  "where

the plaintiffs fail to make even a prima facie showing of Rule 23's prerequisites . . . the burden is

on the plaintiff to demonstrate that discovery measures are likely to produce persuasive

information substantiating the class action allegations"; otherwise courts will not hesitate to grant

a motion to deny class certification.  *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1312-13

(9th Cir. 1977) (applying elevated standard in denying motion to certify class where no discovery

had been conducted); *see also Edwards v. Zenimax Media Inc.*, Civil Action No. 12-cv-00411-

WYD-KLM, 2012 WL 4378219, at *6 (D. Colo. Sept. 25, 2012) (" '[T]he plaintiff bears the

burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P.

23 are satisfied or that discovery is likely to produce substantiation of the class allegations.' . . .

To allow discovery when Mr. Edwards has alleged an unascertainable class would be futile.")

(internal citation omitted).

Where it is apparent that discovery would be pointless, courts routinely grant motions to

deny class certification without it.  *See, e.g., Edwards*, 2012 WL 4378219 (D. Colo. Sept. 25,

2012); *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("Where it is

facially apparent from the pleadings that there is no ascertainable class, a district court may

dismiss the class allegation on the pleadings."); *In re Phenylpropanolamine (PPA) Products*

*Liab. Litig.*, 208 F.R.D. 625, 629-30 (W.D. Wash. 2002) (granting defendants' motion to strike class allegations without discovery where the plaintiffs "failed to demonstrate that discovery would be likely to yield persuasive information substantiating the class allegations").[1]

## II. BECAUSE PUTATIVE CLASS MEMBERS SUFFERED NO INJURY, THE CLASS IS OVERBROAD.

Plaintiff does not dispute that a class which includes members who suffered no injury is overbroad and cannot be certified. Instead, Plaintiff attempts to gin up a new theory in an effort to salvage his class action claim: "That [the putative class members'] tickets contained the offensive language and the market was restricted *is* their injury." (Opp. at 6 (emphasis in original)).[2] Plaintiff's new theory of class member injury falls apart under the slightest scrutiny.

To begin with, the Complaint states that the injuries at issue are the supposed inability of putative class members to resell their tickets in the secondary market. (Compl. ¶¶ 6, 20, 39, 54, 69). Apparently recognizing, in light of footnote 3 in KSE's Motion To Deny, that many putative class members could have suffered no such injury (Opp. at 10 ("it may be true that not

---

[1] Even the cases on which Plaintiff relies actually support, rather than refute, this principle. *See Mills v. Foremont Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008) ("In some instances, the propriety *vel non* of class certification can be gleaned from the face of the pleadings."); In *re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (" '[I]t *may* be necessary for the court to probe behind the pleadings before coming to rest on the certification question.' ") (emphasis added; citation omitted); *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974) ("Maintainability [of a class action] may be determined by the court on the basis of the pleadings.").

[2] As part of the same argument Plaintiff also asserts that the putative class members were "deprived of the benefit of their bargains," and "had their property rights interfered with." (Opp. at 6.) To the extent these statements refer to ticketholders' supposed inability to resell their tickets, the fallacy of that argument is demonstrated in footnote 3 of the Motion To Deny. To the extent the statements and the portions of the Complaint cited mean something different, they are the quintessential bare legal conclusions that the Supreme Court has held are entitled to no weight. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

every class member suffered actual damages")), the Opposition changes tack: it states that the common injury to the putative class members is not actual damages, it is that "the [secondary] market was restricted."

It is far from clear what the Opposition means by this, but any plausible reading does not provide an adequate basis for a properly defined class. If the "restriction of the market" means the purported inability of class members to resell their tickets, then the Opposition's new definition of the class injury amounts to the "actual damages" injuries which the Motion To Deny demonstrates, and the Opposition concedes, cannot provide a basis for a proper class.

If instead the Opposition is suggesting that *the secondary market* was injured, then, first of all, there is no support for such a definition of the class' injury in the Complaint, which only discusses injuries relating to a restriction on the resale of the tickets with the Disputed Language. And second, even if the Court accepts Plaintiff's redefinition of the class' injury, the new definition still begs the question of how all members of the putative class were injured. A class cannot be certified to vindicate a nebulous, undefined injury to the "market."

Whatever phraseology Plaintiff uses to confuse the issue, at base the fact pattern here with respect to class definition is almost a carbon copy of *Edwards v. Zenimax Media*. Both involve an alleged defect in every item sold (in *Edwards* a defective video game, here tickets with the Disputed Language) which could never have affected many putative class members. Both improperly involve putative class members who may have even profited from the behavior at issue.[3] For purposes of the class certification analysis, the two are functionally equivalent.

---

[3] The Opposition claims that *Edwards* "contrasts sharply" (Opp. at 6) with this case, but it does not provide a single distinction indicating *Edwards* contrasts at all, let alone "sharply."

There is no reason the outcome should be any different.

The Opposition's other argument – that reliance and knowledge of "specific contractual terms" are not elements of Plaintiff breach of contract claim – misses the point entirely.[4] *Damages* are an element of Plaintiff's contract claims.  *See, e.g. PurCo Fleet Servs., Inc. v. Koenig*, 240 P.3d 435, 438 (Colo. App. 2010) ("To establish a claim for breach of contract, a party must prove . . . damages."), *aff'd on other grounds*, 285 P.3d 979 (Colo. 2012).  The only way the Disputed Language could have caused damages is if it caused an individual not to resell a ticket he or she otherwise would have.  To have chosen not to resell a ticket because of the Disputed Language, the individual must have *been aware* of its existence.  Any individual who either was not aware of the Disputed Language or who did not "rely on" it (*i.e.*, chose not to resell because of it) logically *could not* have been injured.

## III.   THE CLASS IS NOT ASCERTAINABLE.

The only properly defined class consists of individuals who actually suffered injury, and determining whether each putative class member actually suffered injury would require a series of detailed individualized inquiries.  (Motion To Deny at 8-9).  The Opposition suggests no way to "readily determine whether a beneficiary [wa]s a putative class member without conducting an [sic] highly-individualized inquiry," as required by the Tenth Circuit.  *Quinn v. Nationwide Inc.*

---

[4] The Opposition's reliance on *Berg v. State Bd. of Agric.*, 919 P.2d 254 (Colo. 1996), is inapposite.  The Opposition cites it as support for the proposition that "actual knowledge of specific contract terms isn't required" to establish injury.  (Opp. at 7).  In fact, *Berg* stands for an unrelated principle:  that a plaintiff cannot escape the terms of a valid contract he signed on the grounds that he claimed not to have read it.  919 P.2d at 260.  The case clearly does not stand for the proposition that a party can claim to have been injured by not selling a ticket he or she never desired to sell because of language on a ticket stub he or she never realized was there.

*Co.*, 281 F. App'x 771, 777 (10th Cir. 2008).[5]

## IV.  THE COMPLAINT DOES NOT PLEAD TYPICALITY; THE OVERBROAD CLASS DEFINITION PRECLUDES IT.

Particularly telling, the Complaint does not plead the facts relating to Mr. Fuentes' claims sufficiently to determine whether or not they are typical of the putative class.  For example, the Complaint does not indicate whether Mr. Fuentes (or anyone else) was aware of the Disputed Language when he purchased his tickets, whether he desired to sell his tickets, whether he purchased his tickets on-line and so is subject to the mandatory arbitration provision, or whether he purchased or even sold his tickets in the secondary market.  The Complaint's deficient allegations regarding the operative facts underlying Plaintiff's own claim, combined with the divergent circumstances among members of Plaintiff's overbroad putative class, precludes a finding of typicality.

## V.  PLAINTIFF FAILS TO PLEAD OR PERSUASIVELY ARGUE COMMONALITY.

The Opposition's commonality argument centers on its assertion that every member of the putative class "suffered harm and was injured by virtue of the fact that the [Disputed Language was included on tickets]."  (Opp. at 10).  This suggestion, however, is a red herring.  The Opposition provides no explanation, for example, for *how* a ticket purchaser is harmed simply by the presence of the Disputed Language, particularly if purchasers had no intention of reselling their tickets.[6]  Thus, whether the Disputed Language violates the CCPA is not a

---

[5] Tellingly, the Opposition does not even cite, let alone distinguish, the authority set out in the Motion To Deny.  Instead, it relies on a case clearly inapplicable to the present situation because the defendants "[were] not challenging the precision or definiteness of the class definition." *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 566 (W.D. Wash. 2012).

[6] To the extent the injury to which the Opposition is referring is the "restriction of the secondary market on the whole" (Opp. at 6), the same arguments set out at pages 3-4 apply equally here.

"common question upon which everyone's claim either succeeds or fails" (Opp. at 10).[7]

## VI. INDIVIDUALIZED DAMAGES ISSUES OVERWHELM ANY COMMON ISSUES; THEREFORE, THERE IS NO PREDOMINANCE.

The Opposition makes two arguments on the predominance issue. First, although it admits that the Complaint includes no allegations relating to predominance in the section captioned "Predominance and Superiority" (Opp. at 11), the Opposition claims that the Complaint nevertheless includes sufficient allegations relating to that issue elsewhere, to the effect that "everyone suffered the exact same injury." (Opp. at 11).[8] Because the Opposition provides no citation in support of this assertion, however, we are left to guess what allegations Plaintiff has in mind.

If the Opposition is referring to the generalized statements of common damages such as "Plaintiff and putative class members have been misled into foregoing rights and opportunities in the resale market" (Compl. ¶ 39), and "Plaintiff and other members suffered the same type of harm and sustained similar damages" (*id.* ¶ 45), these statements clearly are insufficient. As discussed in Kroenke's Motion To Dismiss, such conclusions of law without factual support are entitled to no deference and should be disregarded. *Iqbal*, 556 U.S. 677-78. Second, even to the extent these statements were deemed to adequately indicate that members of the putative class

---

[7] The Opposition's reference to cases relating to form contracts (Opp. at 10, n.6) is irrelevant to the issues arising when detailed individualized damages determinations are required. *See infra* § VI.

[8] Plaintiff overlooks the fact that even if the Court did accept Plaintiff's argument that all members of the putative class had been injured by virtue of the alleged violation of the CCPA, that point would be irrelevant to the predominance inquiry because monetary damages for a CCPA violation are not available in a class action. *Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1219 (D. Colo. 2012). The only damages relevant to the predominance inquiry would be the damages relating to Plaintiff's non-CCPA claims, as to which individualized damages determinations would still be particularly required.

share a common type of damages, neither these statements nor anything else in the Complaint address the issue of whether any common issues in the case *predominate* over the individualized inquiries required to ascertain the existence or amount of individual damages.

The Opposition's second argument relating to predominance is that predominance is not precluded *per se* by individual damages questions.  (Opp. at 12-13).  Once again, Plaintiff's description of the basic principles of class certification in the abstract glosses over how the application of those principles in practice requires the court to deny certification of Plaintiff's class here.[9]  Defendant's Motion To Deny nowhere asserts that the mere presence of individual damages questions necessarily precludes predominance.  Rather, it explained that the multiple, fact-intensive, particularized findings that would be required to establish first *whether* any individual putative class member had been injured and then *in what amount*[10] would overwhelm any aspect of the proceedings that are common to the class.

One of the cases on which the Opposition relies is a fine illustration:  *Bulmash v. Travelers Indem. Co.*, 257 F.R.D. 84 (D. Md. 2009), held that individual damages issues did not

---

[9] The Opposition does not even mention, let alone distinguish, many of the cases cited in the Motion To Deny, which establish that the type of individualized damages determinations that would be required if a class were certified in this case would predominate over any common questions.  And even where the Opposition does attempt to distinguish those cases, it fails.  The Opposition asserts (in italics, no less) that the quotation from *Fincher ex rel. Fincher*, was "actually lifted *from the lower court's holding in that case, not the opinion of the court.*"  (Opp. at 12) (emphasis in original).  Plaintiff's assertion is false; the quote comes directly from the Court of Appeals decision, which approvingly quoted the district court.  To the extent there was any doubt regarding the approach of the Court of Appeals, the opinion then immediately added "[b]ecause of the number of individual issues that would necessarily arise, common questions of law or fact do not predominate."  *Fincher ex rel. Fincher v. Prudential Prop. & Cas. Ins. Co.*, 374 Fed. App'x 833, 848 (10th Cir. 2010).

[10] Because determination of the amount of any damages would require extensive individualized hearings, predominance would not exist even if Plaintiff could establish that all members of the putative class shared a common injury.  (*See* Motion To Deny at 12-13).

predominate because "the damages calculation could be, for most claimants, *a matter of simple arithmetic*." *Id.* at 91 (emphasis added).  Very much *un*like *Bulmash*, however, to set damages in this case the Court would be forced to undertake extensive mini-trials for each of the "potentially millions" of putative class members (Opp. at 2) to determine issues including whether each putative class member was aware of the Disputed Language, whether he or she desired to sell his or her ticket, whether he or she did in fact sell the ticket, whether the ticket could have been sold had the owner tried to sell it, whether the ticket was bought in the secondary market, etc.[11]  This is not simple arithmetic by any stretch.  In this case the individual issues overwhelm the common.[12]

## VII.   A FED. R. CIV. P. 23(B)(2) CLASS SHOULD NOT BE CERTIFIED.

Plaintiff's tortured reading and untenable application of an academic's observations does nothing to change the fact that binding precedent counsels against certifying a class under FED. R. CIV. P. 23(b)(2) in a case, like this one, where " 'all the class members will benefit from an injunction issued on behalf of the named plaintiff[ ].' " *Kansas Health Care Ass'n Inc. v. Kansas Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1548 (10th Cir. 1984) (internal citation omitted). The Opposition's argument that "this hardline approach is no longer favored" (Opp. at 13) is simply incorrect.  The Opposition does not cite a single case in support of its assertion, only an incomplete quotation from Federal Practice and Procedure, which is significantly deceptive and

---

[11]  The Complaint itself suggests the need for just such individualized findings when it emphasizes that class members' damages are a function of each member's "personal preference and profit-maximizing motives."  (Compl. ¶ 69).

[12]  The Opposition suggests that "sampling or other tools" might be used to simplify individual damages issues. (Opp. at 13, n.8).  Plaintiff suggests no specifics regarding how such "sampling or other tools" could conceivably be used to overcome the slew of individualized determinations that would be required.

misleading because it omits the sentences immediately preceding it.  Those sentences state in no uncertain terms that the approach adopted by *Kansas Health* "now seems well-accepted as an appropriate consideration when certifying a Rule 23(b)(2) action."  7A Charles A, Wright *et al.*, Federal Practice and Procedure §1785.2 (3d ed.) (citing more than fifty cases refusing certification where injunctive or declaratory relief issued on behalf of the plaintiff would inure to the benefit of the putative class).

## CONCLUSION

WHEREFORE, Defendant Kroenke Sports & Entertainment, LLC respectfully requests that the Court grant its Motion To Deny Class Certification.

Dated:  December 13, 2013.

Respectfully submitted,

*s/Kevin D. Evans*

By:   _____

Kevin D. Evans
John T. Osgood
STEESE, EVANS & FRANKEL, P.C.
6400 S. Fiddlers Green Circle
Suite 1820
Denver, Colorado 80111
Telephone:     720.200.0676
Facsimile:      720.200.0679
Email:  kdevans@s-elaw.com
           josgood@s-elaw.com

IJay Palansky
STEESE, EVANS & FRANKEL, P.C.
The Army and Navy Club Building
1627 I Street, N.W.
Suite 850
Washington, DC 20006
Email:  ipalansky@s-elaw.com

Attorneys for Defendant KROENKE SPORTS & ENTERTAINMENT, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of December, 2013, I caused the foregoing **DEFENDANT KROENKE SPORTS & ENTERTAINMENT, LLC'S REPLY IN SUPPORT OF OPPOSED MOTION TO DENY CLASS CERTIFICATION** to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to the following attorneys of record:

Steven L. Woodrow
Megan L. Lindsey
EDELSON, LLC
999 West 18th Street
Suite 3000
Denver, CO 80202
Telephone: 303.357.4878
Facsimile: 303.446.9111
swoodrow@edelson.com
mlindsey@edelson.com

Jerry S. McDevitt
K&L GATES, LLP
210 Sixth Avenue
Pittsburgh, PA 15222
Telephone:  412.355.8608
Facsimile:  412.355.6501
jerry.mcdevitt@klgates.com

Ryan M. Tosi
R. Bruce Allensworth
K&L GATES, LLP
One Lincoln Street
State Street Financial Center
Boston, MA 02111
Telephone:  617.261.3100
Facsimile:  617.261.3100
ryan.tosi@klgates.com
bruce.allensworth@klgates.com

Craig R. May
Kenneth E. Stalzer
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: 303.244.1800
Facsimile: 303.244.1879
may@wtotrial.com
stalzer@wtotrial.com

*s/Leigha Wickham*

_____

Leigha Wickham
Paralegal
STEESE, EVANS & FRANKEL, P.C.